IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TISHA NICKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:15cv00953-SRW |
| | ) | |
| JACKSON HOSPITAL & CLINIC INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Tisha Nickson brings this action against Defendant Jackson Hospital & Clinic, Inc. ("Jackson"), alleging employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. See* Doc. 1 at 1. Nickson brings claims of discrimination on the basis of her race (African-American) and retaliation. Plaintiff avers that Jackson discriminated against her by paying her less "than Caucasians in other comparative manager positions," denying her promotions, and terminating her employment. Doc. 1 at 2-3. In support of her retaliation claims, Nickson alleges that she opposed unlawful race discrimination and that her position was eliminated after she filed a charge of race discrimination with the Equal Employment Opportunity Commission. *See* Doc. 1 at 3.

---

[1] The parties consented to final dispositive jurisdiction by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). *See* Doc. 31; Doc. 32. This case was reassigned to the undersigned as the presiding judge on February 15, 2017. *See* Doc. 33.

This action is presently before the court on Jackson's motion for summary judgment. *See* Doc. 19. Nickson filed an opposition to the motion for summary judgment, *see* Doc. 26, and Jackson replied, *see* Doc. 29. Nickson also moves to dismiss all claims that are not reasserted in her brief in opposition to Jackson's motion for summary judgment.[2] *See* Doc. 26 at 1. Upon review of the motions and the record, the court concludes that Jackson's motion for summary judgment is due to be granted, and plaintiff's motion to dismiss is also due to be granted.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment if it "shows that there is no genuine disputes as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For summary judgment purposes, an issue of fact is "material" if, under the substantive law governing the claim, its presence or absence might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the movant fails to satisfy its initial burden, the motion for summary judgment will be denied. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1810 (2013). If the movant adequately supports its motion, the burden shifts to the opposing party to establish – "by producing affidavits or other relevant and admissible evidence beyond the pleadings" – specific facts raising a genuine issue for trial. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011); *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010); Fed. R. Civ. P. 56(c)(1)(A).

---

[2] The court construes Nickson's voluntary motion to dismiss as one brought pursuant to Federal Rule of Civil Procedure 41(a)(2).

"All affidavits [and declarations] must be based on personal knowledge and must sets forth facts that would be admissible under the Federal Rules of Evidence[.]" *Josendis*, F.3d at 1315; Fed. R. Civ. P. 56(c)(4). The court views the evidence and all reasonable factual inferences in the light most favorable to the nonmovant. *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d at 1315; Fed. R. Civ. P. 56(c)(4). However, "[i]f no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (citation omitted) (internal quotation marks omitted).

## BACKGROUND AND UNDISPUTED FACTS[3]

As noted above, Nickson is African-American. In August 2010, Jackson hired Nickson to work as a part-time phlebotomist in its main laboratory. Nickson's education includes a Bachelor of Science degree in legal studies, a Master's Degree in Health Care Administration, a paralegal Associate Degree, a certified nursing certificate, and a phlebotomy certificate. Prior to her employment at Jackson, Nickson worked as a phlebotomist for approximately five years, as a certified nursing assistant for approximately three years, and as a paralegal for roughly three to four years.

In January 2011, Jackson transferred Nickson to a full-time position as a technician in the Outreach Lab. Shortly thereafter, in March 2011, she was promoted and became the

---

[3] Unless otherwise noted *infra*, the undisputed facts for summary judgment purposes are summarized based upon the facts stated by Jackson in its brief in support of the motion for summary judgment, *see* Doc. 19-1 at 1-3, because Nickson expressly adopts the same factual statement. *See* Doc. 26 at 1. As required, any disputed facts are construed in the plaintiff's favor.

Business and Sales Manager for the Outreach Lab. In this position, Nickson was responsible for supervising one employee, the Outreach Lab's billing and coding assistant.

In the summer of 2013, the position of Vice President of Physician Services became available. Nickson contacted Riley to express an interest in the position. *See* Doc. 26-2 at 23. Riley told her that he had someone in mind for the position who had experience as a vice president, and Nickson acknowledged that she did not have that kind of experience. *See id*. Riley told Nickson that he would consider her when a director's position became available. *See id*.

Until September 2013, Pat Harris, a Caucasian female, was the director of both the main hospital lab and the Outreach Lab. In September 2013, Joe Riley, Jackson's CEO, separated the Outreach Lab from the hospital's main lab. Harris remained as the supervisor of the main lab, and she was no longer responsible for the Outreach Lab. At around the same time, Jackson promoted Michael Ritzus to Vice President of Physician Services, and he was placed in charge of the Outreach Lab. Ritzus was Nickson's supervisor. He asked Nickson to serve as the interim Outreach Lab Manager in addition to her position as the Business and Sales Manager. She initially agreed but, in December 2013, she asked him to hire an Outreach Lab Manager and allow her to return solely to her position as the Business and Sales Manager. Ritzus and Nickson interviewed candidates, and Jackson hired Patricia Morrow as the Outreach Lab Manager.

According to Nickson, Ritzus excluded her from meetings, reassigned her job duties to other employees, called her "incompetent," mistreated her, used profanity in speaking to her, and caused her to feel intimidated. Doc. 26-2 at 24-35. On December 16, 2013,

Nickson approached the human resources director, Gilbert Darrington, and they had a discussion about Nickson's relationship with Ritzus, her pay, and her interest in being promoted to a position as the director of the Outreach Lab. *See id*. at 24-25. Nickson also discussed her perception of Ritzus' treatment of her with Harris. *See* Doc. 26-8 at 5.  On March 6, 2014, Nickson sent Ritzus an email to request that she be placed on leave due to job-related stress, and she wrote that the cause of her stress was largely due to his treatment of her.  *See* Doc. 26-8 at 3.

Nickson testified at her deposition that she believes Ritzus' actions were motivated by racial animus, *see* Doc. 26-2 at 26, 32-33, 35, but there is no evidence of record that the plaintiff complained to anyone at Jackson that Ritzus or anyone else was discriminating against her on the basis of her race before she filed her charge of discrimination with the EEOC on March 11, 2014. *See* Doc. 19 at 65. Also, Nickson alleges in her complaint that she "made a complaint to human resources in December 2013 about the intimidating and harassing treatment she was receiving from Mr. Ritzus," but she does not allege in that pleading that his treatment of her was based on her race or that she communicated to human resources that she was being mistreated by Ritzus because she is African-American. Doc. 1 at 3. In short, there is neither any allegation nor any evidence that Nickson alerted Jackson, or that decision makers at Jackson had knowledge, that she thought Ritzus or anyone else had discriminated against her because of her race prior to March 11, 2014.

On that date, Nickson filed with the EEOC a charge of race discrimination against Jackson. *See* Doc. 19 at 65. The EEOC mailed Jackson a copy of a notice and charge of discrimination on March 20, 2014. *See* Doc. 19 at 71. Because these were addressed to

5

someone who no longer worked for Jackson, a mail clerk removed the documents from the envelope, placed all documents except for the charge of discrimination into another envelope marked "Return to Sender," and sent the envelope to the EEOC. *See* Doc. 19 at 71; Doc. 26-12 at 4. The EEOC received the returned mail on March 28, 2014. *See* Doc. 19 at 71. It re-sent the notice and charge of discrimination, which Jackson received on April 10, 2014. *See* Doc. 26-12 at 2.

On March 31, 2014, Jackson notified Nickson that the position of Business and Sales Manager was being eliminated, effective immediately, and Jackson terminated her employment. After Jackson eliminated Nickson's position, she filed a second charge of discrimination with the EEOC on May 14, 2014, in which she alleged that Jackson retaliated against her by terminating her employment because of her March 31, 2014 charge.

Jackson sold the Outreach Lab in June 2015.

## DISCUSSION

### I.      Nickson's Claims and Motion to Dismiss

The plaintiff filed her complaint *pro se*.[4] On June 17, 2016, attorney Norman Hurst entered an appearance on Nickson's behalf. *See* Doc. 16. Mr. Hurst did not file a motion

---

[4] A party who proceeds *pro se* represents himself and acts without an attorney. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1319 n.16 (11th Cir. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted)). In the Eleventh Circuit,

> The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law. One who proceeds *pro se* with full knowledge and understanding of the risks involved acquires no greater rights than a litigant represented by

for leave to file an amended complaint on his client's behalf. Nickson's own complaint complies with Federal Rules of Civil Procedure 8(a), and it clearly asserts Title VII disparate treatment claims for (1) failure to promote her to the positions of (a) Vice President of Physician Services and (b) Director of the Outreach Lab, (2) unequal pay, and (3) termination; and Title VII retaliation claims based on Jackson's (1) failure to promote her to the position of director after she complained about Ritzus, and (2) termination of her employment. *See* Doc. 1. Also, Nickson alleges that she complained to human resources about "the intimidating and harassing treatment she was receiving from Mr. Ritzus." Doc. 1 at 3. Viewed under the less stringent standard applied to *pro se* pleadings, Nickson has arguably asserted a disparate treatment claim as to the terms and conditions of her employment based on allegedly discriminatory actions by her supervisor, Ritzus. The plaintiff's complaint is pled so that, either under the less stringent standard reserved for *pro se* litigants or the higher standard for pleadings drafted by attorneys, the aforementioned are the plaintiff's only claims. *See* Fed. R. Civ. P. 8(a) (a complaint must set out the plaintiff's claims for relief). Jackson moves for summary judgment in its favor on all of Nickson's claims.

Nickson moves "to dismiss all claims not specifically addressed" in her opposition to Jackson's motion for summary judgment. Doc. 26 at 1. In that filing, Nickson argues

a lawyer, unless a liberal construction of properly filed pleadings be considered an enhanced right. Rather, such a litigant acquiesces in and subjects himself to the established rules of practice and procedure.

*Cummings v. Dep't of Corr.*, 757 F.3d 1228, 1234 n.10 (11th Cir. 2014) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. Nov.1981) (*per curiam*) (citations omitted)).

that Jackson has a "pattern and practice of low pay, eliminating positions and restructuring when it relates to African-Americans Outreach Business and Sales Managers"; that Jackson's assertion that there were quality control problems in the Outreach Lab are a ruse to mask the discriminatory promotion of Ritzus to the position of Vice President instead of Nickson; and that Jackson terminated her employment as retaliation for her opposing race discrimination and participating in the protected activity of filing an EEOC charge. *See id.* at 2-10.

Regarding Nickson's first argument in opposition to Jackson's motion for summary judgment, Nickson did not assert a claim for pattern and practice discrimination in her complaint. A plaintiff cannot amend a complaint through an argument in a brief opposing summary judgment. *See Hall v. Dekalb Cty. Gov't*, 503 F. App'x 781, 786 (11th Cir. 2013). Thus, a pattern and practice discrimination claim is not properly before the court, and this claim has not been considered. In the alternative, even had Nickson properly asserted such a claim, it would not survive summary judgment. "There are two theories of intentional discrimination under Title VII: disparate treatment and pattern or practice discrimination. Disparate treatment claims require proof of discriminatory intent either through direct or circumstantial evidence." *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). "In contrast, a pattern and practice claim either may be brought by the EEOC if there is reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of discrimination … or by a class of private plaintiffs[.]" *Id.* (internal citations and marks omitted). This is not a class action lawsuit,

nor do the allegations of plaintiff's complaint lend themselves to class treatment. Thus, Nickson cannot maintain a pattern or practice claim as a matter of law.

As to Nickson's motion to dismiss, she does not make any arguments in opposition to summary judgment as to her disparate treatment claims for Jackson's failure to promote her to the position of Director of the Outreach Lab or her termination from employment. Nickson also does not reference or offer any argument to support a claim of race discrimination or harassment based on Ritzus' conduct. In addition, Nickson is silent as to her retaliatory failure to promote claim. *See* Doc. 26 at 6-10. Her motion to dismiss will be granted as to these claims.

In any event, Nickson abandoned any claim that she did not directly address in her opposition to Jackson's motion for summary judgment. *See Resolution Trust Corp. v Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (noting that "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned"); *Floyd v. Home Depot U.S.A., Inc.*, 274 F. App'x 763, 765 (11th Cir. 2008). Jackson is entitled to summary judgment on those claims.

For reasons that are not made clear, Nickson appears to argue against Jackson's motion for summary judgment as though she has not asserted disparate treatment claims for failure to promote her to the job of Vice President of Physician Services and for unequal pay; rather, she only argues in support of those theories of discrimination as though they were pled as pattern and practice discrimination claims. As discussed above, Nickson has no pattern and practice claims. Nevertheless, despite the fact that Nickson makes only cursory arguments in her opposition brief to support her disparate treatment promotion and

pay claims, those passing references cause the court to conclude that plaintiff did not intend to dismiss her disparate treatment claims. Thus, the court will not grant her motion to dismiss those disparate treatment claims. Also, Nickson opposes summary judgment on her claims for retaliatory termination. Those claims will not be dismissed pursuant to Nickson's motion.

Accordingly, the plaintiff's claims remaining before the court for consideration on Jackson's motion for summary judgment are (1) a disparate treatment race discrimination claim for failure to promote Nickson to the position of Vice President of Physician Services for which Ritzus was hired, (2) a disparate treatment race discrimination pay claim, and (3) a retaliatory termination claim.

## II.    Disparate Treatment Race Discrimination Claims

### A.    Analytical Framework for Discrimination Claims

Under Title VII, it is unlawful for an employer to discriminate against an employee on the basis of her race with respect to the terms and conditions of her employment. 42 U.S.C. § 2000e-2(a)-(m). The *McDonnell Douglas*[5] framework was established by the Supreme Court for evaluating a Title VII plaintiff's claims of discrimination against an employer where, as here, there is no direct evidence of discrimination. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997); *Brown v. Ala. Dep't of Trans.*, 597 F.3d 1160, 1174 (11th Cir. 2010). The plaintiff must first make out a *prima facie* case of discrimination. *Tex. Dep't of Community Affairs v. Burdine*, 450 U.S. 248,

---

[5] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

252-53 (1981); *Walker v. Mortham*, 158 F.3d 1177, 1183 (11th Cir. 1998); *Combs*, 106 F.3d at 1527-28. "Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case." *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 254) (internal quotations marks omitted).

If the plaintiff establishes a *prima facie* case, the employer has the burden of producing "legitimate, nondiscriminatory reasons for the challenged employment action." *Combs*, 106 F.3d at 1528 (citing *McDonnell Douglas*, 411 U.S. at 802). "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 257). If the employer articulates a legitimate, nondiscriminatory reason for its decision, the mandatory inference of discrimination arising from the *prima facie* case is destroyed. *Walker*, 158 F.3d at 1184.

The plaintiff must then produce evidence "including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs*, 106 F.3d at 1528. A plaintiff may establish pretext by producing evidence that reveals "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the defendant's] proffered legitimate reasons for its

actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1348-49 (11th Cir. 2007) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004)) (internal quotation marks omitted). However, "[a] reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Id.* (citing *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (emphasis in the original)).

## III. Disparate Treatment Claims – Race Discrimination

### A. Pay

In order to establish a *prima facie* case of disparate treatment, a plaintiff must show that "she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). A plaintiff must show that a possible comparator is "similarly situated in all relevant respects" and is "nearly identical to the plaintiff." *Id.* at 1091. Nickson's disparate treatment pay claim fails because she has not identified a similarly situated person outside of her protected class who received higher compensation. In her opposition, Nickson discusses only her pay and the pay of Raymond Shores, who was the Outreach Business and Sales Manager prior to her. *See* Doc. 26 at 2-3. Shores is also African-American; consequently, he is within her protected class. Thus, Jackson is entitled to summary judgment on Nickson's disparate treatment pay claim.

### B. Failure to Promote – Vice President of Physician Services

It is well-established in the Eleventh Circuit that:

> Under the *McDonnell Douglas* framework, to prevail on a claim of failure to promote, a plaintiff may establish a *prima facie* case of … discrimination by showing that: (1) she is a member of a protected class; (2) she was qualified and applied for the promotion; (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted.

*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004). "The comparators for the fourth prong must be "'similarly situated in all relevant respects.'" *Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997)). Assuming without deciding that Nickson meets the first three factors of the *prima facie* inquiry, she fails to establish the fourth requirement with respect to her allegation that Jackson denied her a promotion to Vice President of Physician Services at the time that Ritzus was hired for that position. The undisputed evidence of record demonstrates that Ritzus was more qualified for the position; thus, he is not a similarly situated comparator to Nickson.

At the time of his promotion, Ritzus had two masters' degrees, over ten years' experience supervising up to approximately 110 employees, and he was a "director" in Jackson's organizational structure. *See* Doc. 26-3 at 3-11; Doc. 26-6 at 3. At the time of Ritzus' hiring, Nickson had one masters' degree, and her supervisory experience consisted of less than three years with one subordinate employee. *See* Doc. 19-1 at 2. Also, Nickson was a "manager," which is a position below a "director" in Jackson's corporate hierarchy.

Thus, Ritzus was not "equally or less qualified" than Nickson at the time that Jackson promoted him to Vice President of Physician Services. *Wilson*, 376 F.3d at 1089. Jackson is entitled to summary judgment on plaintiff's failure to promote claim.

## IV. Retaliation

"Retaliation is a separate violation of Title VII." *Gupta v. Florida Board of Regents*, 212 F.3d 571, 586 (11th Cir. 2000). Section 704(a) of Title VII of the Civil Rights Act of 1964 provides protection for employees who oppose or participate in activities to correct an employer's discriminatory practices.

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a). Congress thus recognized two predicates for retaliation claims: one for opposition to discriminatory practices, and another for participation in protected activity.

> Under the opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." ... And, under the participation clause, an employer may not retaliate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

*Equal Employment Opportunity Commission v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (citations omitted).

Proving that an employer retaliated against an employee is rarely a straightforward undertaking. A plaintiff's case generally rests on circumstantial evidence, because direct

evidence of an employer's intent or motivation often is either unavailable or difficult to acquire. *See Sheridan v. E.I. DuPont De Nemours & Co.*, 100 F.3d 1061, 1071 (3rd Cir. 1996) (*en banc*). Such is the case here, where the parties rely only on circumstantial evidence. Federal courts typically evaluate the sufficiency of circumstantial evidence using some variant of the *McDonnell Douglas* framework. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

"A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)).

Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to show, through admissible evidence, a legitimate, non-retaliatory reason for the adverse employment action. *See Burdine*, 450 U.S. at 255. If a defendant carries its burden of producing "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by [retaliatory] animus," *id.* at 257, the presumption of retaliation created by the *prima facie* case "drops from the case," and "the factual inquiry proceeds to a new level of specificity." *Id.* at 255 & n.10. The burden then shifts to the plaintiff to "come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for

the adverse employment decision," but merely pretext for retaliation. *Combs*, 106 F.3d at

1528 (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804).

The Supreme Court recently clarified a plaintiff's burden and held that, as to the

causation standard for a retaliation claim, a plaintiff must "show that the [adverse

employment action] would not have occurred in the absence of – that is, but-for – the

defendant's conduct." *University of Texas Southwestern Med. v. Nassar*, 570 U.S. __, 133

S.Ct. 2517, 2525 (2013). In other words, a plaintiff has to "establish that his or her protected

activity was a but-for cause [and not just a motivating factor] of the alleged adverse

employment action by the employer." *Nassar*, 133 S.Ct. at 2534.

Nickson asserts both opposition and participation claims. *See* Doc. 1; Doc. 19 at 68.

## A.     Opposition Claim.

In support of her opposition claim, plaintiff maintains that she began complaining

to her supervisors of mistreatment by Ritzus as early as November 2013 and until March

11, 2014 – the date she filed her first EEOC charge. *See* Doc. 26 at 8. There is evidence to

support plaintiff's assertion that she complained to Ritzus and human resources employees

about her relationship with Ritzus, particularly her perception that he treated her in a

disrespectful, demeaning, and insulting manner. *See* Doc. Doc. 26-2 at 26, 32-33, 35.

However, the plaintiff has adduced no evidence that she complained to anyone at Jackson

that she was being discriminated against on the basis of her race. Moreover, the evidence

of record shows that Nickson never stated that her complaints about Ritzus were based on

alleged discrimination because of her race. *See* Doc. 19 at 41; Doc. 26-1 at 5; Doc. 26-2

at 25, 33, 36, 41; Doc. 26-8 at 5-6; Doc. 26-15 at 3; Doc. 26-16 at 5. Complaints are not

protected activity when they do not "allege that [they] ... had any relationship to race or otherwise indicate that the [defendant] was engaged in unlawful employment practices." *Satchel v. School Bd. of Hillborough Cty.*, 251 F. App'x 626, 628 (11th Cir. 2007); *see also Brown v. City of Opelika*, 211 F. App'x 862, 864 (11th Cir. 2006) (noting that the plaintiff admitted that she had not mentioned race when she complained). Therefore, Nickson has failed to establish a *prima facie* case of retaliation based on complaints she made to anyone at Jackson.

> The Eleventh Circuit
>
> recognized that a plaintiff can establish a *prima facie* case of retaliation under the opposition clause of Title VII if [s]he shows that [s]he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. *See Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989). It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that [s]he subjectively (that is, in good faith) believed that h[er] employer was engaged in unlawful employment practices, but also that h[er] belief was objectively reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that h[er] belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

*Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). The plaintiff does not have to "prove the underlying discriminatory conduct that [she] opposed was actually unlawful in order to establish a *prima facie* case and overcome a motion for summary judgment[.]" *Id.* However, the objective reasonableness of her belief that the conduct is unreasonable must be shown. The court is required to "measure 'against existing substantive law' the objective reasonableness of [a plaintiff's] belief that [her employer] engaged in an unlawful employment practice." *Tatt v. Atlanta Gas Light Co.*, 138 F. App'x

145, 147 (11th Cir. 2005) (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999)).

Here, Nickson subjectively believed that she was discriminated against on the basis of her race. However, her subjective belief is not objectively reasonable in light of the evidence proffered in this case. Nickson testified that it was her perception that Ritzus discriminated against her on the basis of race because, *inter alia*, he talked to her like she "was trash," he did not speak to white employees in a demeaning manner in her presence, he used profanity, and he called her "incompetent."[6] *Id.* at 32-33, 35. The plaintiff speculates that, because Ritzus is white and she is African-American, and Ritzus treated her poorly, he discriminated against her on the basis of her race. The plaintiff's speculation is not evidence that can overcome a motion for summary judgment. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1318 (11th Cir. 2011) (stating that "'evidence' consisting of one speculative inference heaped upon another" was "entirely insufficient" to overcome summary judgment); *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931–32 (7th Cir. 1995)).

Also, "Title VII does not prohibit profanity alone, however profane. It does not prohibit harassment alone, however severe and pervasive. Instead, Title VII prohibits

---

[6] Nickson does not explain how being called "incompetent" is demonstrative of racial animus, and discriminatory intent is not clearly evident in Ritzus' use of the word. At her deposition, Nickson testified that Ritzus also called a white employee of the Outreach Lab "incompetent." Doc. 26-2 at 36.

discrimination[.]" *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1301 (11th Cir. 2007). Nickson simply has put forth no evidence of race discrimination in this case other than her own subjective impressions. She has not identified any instance or comment that objectively could be construed as having been motivated by Nickson's race.

Even assuming that plaintiff demonstrated objective reasonableness, her opposition claim does not survive summary judgment because she cannot satisfy the third prong of a *prima facie* case of retaliation. Nickson must come forward with evidence that the decision makers at Jackson were aware of the protected conduct – i.e., her opposition to race discrimination by Ritzus – and that the protected activity and the adverse action – i.e., termination of her employment – are not wholly unrelated. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999). Nickson has not produced evidence to show that she complained to anyone at Jackson that she was being discriminated against on the basis of her race. In other words, there is no evidence that Jackson's decision makers were aware that Nickson had opposed what she believed to be unlawful race discrimination prior to her March 11, 2014, charge of discrimination.

Accordingly, she has not demonstrated a *prima facie* case of retaliation based on opposition as a result of her complaints between November 2013 and March 11, 2014, and Jackson is entitled to summary judgment on that claim.

Also, assuming, without deciding, that Nickson established a *prima facie* case, she cannot overcome Jackson's legitimate, non-retaliatory reason for terminating her employment. Ritzus testified at his deposition and by affidavit that, prior to March 6, 2014, he decided to recommend to CEO Joe Riley that Nickson's position be eliminated. *See*

Doc. 26-3 at 32; Doc. 26-6 at 6. In February 2014, Ritzus recommended to Riley that Jackson sell the Outreach Lab, and Riley instructed Ritzus to start looking for potential buyers. *See* Doc. 26-6 at 5. According to Ritzus, the decision to eliminate Nickson's position was made because Jackson was not seeking to grow the Outreach Lab's business; therefore, the Sales and Business Manager position held by Nickson "was deemed unnecessary and … eliminated on March 31, 2014." *Id.* Jackson sold the Outreach Lab in 2015.

Thus, it is Nickson's burden to come forward with evidence sufficient to permit a reasonable factfinder to conclude that Jackson's stated reasons were not the real reasons for her termination, but merely pretexts for retaliation. She cannot demonstrate pretext unless it is shown both that the reasons were false and that retaliation was the real reason. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). *See also Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (stating the plaintiff must meet each proffered reason "head on," and cannot succeed by simply disputing the wisdom of the employer's proffered reasons).

Nickson has not identified or produced evidence that would allow a reasonable factfinder to conclude that Jackson's proffered reasons are false. Moreover, viewing the facts in the light most favorable to Nickson, she cannot establish that retaliation was the "but-for" cause of her termination. *See Butterworth v. Laboratory Corp. of America Holdings*, 581 F. App'x 813, 817 (11th Cir. 2014) (holding that without establishing but-for causation, plaintiff failed adequately to support her claim for Title VII retaliation). Nickson does not rebut the evidence showing that Jackson decided to halt the growth of

the Outreach Lab and that the business was ultimately sold pursuant to plans that were in

place before Nickson filed her EEOC charge. As Nickson cannot meet the onerous *Nassar*

standard to maintain a retaliation claim under Title VII, Jackson's motion for summary

judgment is due to be granted as to Nickson's opposition claim.

## B. Participation Claim

Nickson triggered the protections of the participation clause of Title VII when she

filed a charge of discrimination with the EEOC on March 11, 2014. The plaintiff suffered

an adverse employment action when her job was eliminated on March 31, 2014. As to

causation,

> [t]he burden of causation can be met by showing close temporal proximity
> between the statutorily protected activity and the adverse employment action.
> *See Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798-99 (11th Cir.
> 2000). But mere temporal proximity, without more, must be "very close."
> *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511,
> 149 L.Ed.2d 509 (2001) (internal citations omitted).

*Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). In the instant case,

construing the facts in the light most favorable to the plaintiff, Jackson received a copy of

her EEOC charge sometime between March 20, 2014 and March 28, 2014.[7] *See* Doc. 19 at

---

[7] Whether Jackson received the EEOC charge during this time frame and whether any of the decision
makers regarding Nickson's termination were aware of the charge are factual issues that are hotly contested
between the parties. There is evidence of record that the charge was addressed to a former employee at
Jackson, that the only Jackson employee who saw the charge in March 2014 was a mail clerk, and that the
charging documents were not delivered internally to the human resources department or elsewhere. *See*
Doc. 19 at 71. That said, the charge of discrimination was not returned to the EEOC on March 28, 2014.
*See id.* The court construes the facts in the light most favorable to the plaintiff and assumes, for purposes
of summary judgment, that Jackson received the charge sometime between eleven and three days prior to
the elimination of plaintiff's job.

"[A] plaintiff must, at a minimum, generally establish that the defendant was actually aware of the
protected expression at the time the defendant took the adverse employment action." *Raney v. Vinson Guard
Serv. Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997). "[I]n a case involving a corporate defendant the plaintiff

71. The court assumes that, for purposes of establishing a *prima facie* case, the plaintiff has shown a causal connection between her filing of an EEOC charge and the elimination of her job solely due to the temporal proximity between the events. A period of three to eleven days between the date Jackson received the charge and the elimination of Nickson's job is sufficient to show causation in the instant case.

Nevertheless, for the same reasons that Nickson's opposition claim fails, her participation claim cannot survive summary judgment – *i.e.*, Jackson has met its burden to show legitimate, non-retaliatory reasons for terminating Nickson's employment, and she has not produced evidence of pretext. Moreover, Nickson cannot meet the *Nassar* but-for standard. Thus, Jackson is entitled to summary judgment on Nickson's participation claim.

## CONCLUSION AND ORDER

For the foregoing reasons, it is ORDERED as follows:

(1) Jackson's motion for summary judgment, *see* Doc. 19, is GRANTED and summary judgment is hereby entered in Jackson's favor on all claims.

---

must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression and acted within the scope of his or her agency when taking the action." *Id.* There is evidence of record that the decision makers did not have knowledge of the plaintiff's EEOC charge when her job was eliminated. *C.f. Brungart v. Bellsouth Telecomm., Inc.*, 231 F.3d 791, 794, 800 (11th Cir. 2000) (finding no genuine issue of material fact of a causal connection in the face of unrefuted testimony by the decision make that he did not have actual knowledge of protected activity). The decision makers were Ritzus, Riley, and Darrington. *See* Doc. 26-3. However, the evidence that Jackson received the charge prior to the elimination of Nickson's position also is evidence from which a reasonable jury could conclude that the decision makers were aware of Nickson's charge prior to her termination date, and a jury could reject Ritzus' testimony that he lacked knowledge of the EEOC charge prior to eliminating plaintiff's job. *See Anderson*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."); *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) ("Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." (internal quotation marks and citations omitted)). Thus, for summary judgment purposes, the court assumes without deciding that the decision makers were aware of the plaintiff's EEOC charge after March 20, 2014.

(2) Plaintiff's motion to dismiss is GRANTED in the manner stated herein.

(3) The Clerk of Court is DIRECTED to close this file.

A separate final judgment will be entered.

DONE, on this the 29th day of September, 2017.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge